UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONEL MCFADDEN,

                          Petitioner,          **No. 1:18-cv-00865-MAT**
                                               **DECISION AND ORDER**

          -vs-

HAROLD D. GRAHAM,

                          Respondent.

_____

I.    **Introduction**

    Proceeding <u>pro se</u>, Ronel McFadden ("McFadden" or "Petitioner")
commenced this habeas corpus action pursuant to 28 U.S.C. § 2254
challenging the constitutionality of his detention in Respondent's
custody. McFadden is incarcerated pursuant to a judgment entered on
March 7, 2013, in New York State, Monroe County Court (Piampiano,
J.), following a jury verdict convicting him of one count of Rape
in the First Degree (New York Penal Law ("P.L.") § 130.35(1)) and
two counts of Criminal Sexual Act in the First Degree (P.L.
§ 130.50 (1)).

II.   **Factual Background and Procedural History**

    A.    **The Indictment and Pre-Trial Proceedings**

    The conviction here at issue stems from unlawful sexual
conduct against an adult female ("the victim") which allegedly
occurred on or about May 3, 2006, at the victim's home in
Rochester, New York. On September 13, 2006, the Monroe County
District Attorney's Office received DNA information connecting

McFadden to the alleged crime. However, he was not arrested and incarcerated until June 6, 2012, almost six years later. An indictment was returned on June 15, 2012, charging McFadden with one count of Rape in the First Degree (P.L. § 130.35(1)) and two counts of Criminal Sexual Act in the First Degree (P.L. § 130.50(1)).

Trial counsel filed a motion to dismiss the indictment on the ground that pre-indictment delay had resulted in a violation of due process. Monroe County Court Judge James J. Piampiano ("the trial court") ordered a hearing pursuant to People v. Singer, 44 N.Y.2d 241 (1978), to determine "whether the nearly six year delay in arresting and indicting [McFadden] was unreasonable and a violation of [his] due process rights, or whether it was a determination made in good faith to defer commencement of the prosecution for sufficient reasons." SR.80-83.[1]

At the Singer hearing, the prosecution called Assistant District Attorney Caroline Edwards-Morrison ("ADA Morrison"), who had been assigned to this matter. In reviewing the file, ADA Morrison found a letter dated September 13, 2006, from the Monroe County Public Safety Laboratory indicating a match between the DNA obtained from the victim's rape kit and the DNA sample from McFadden in the CODIS DNA database. These DNA results led to the

---

[1]     Numerals preceded by "SR." refer to the page numbers stamped on the copies of the state court records (Docket No. 16-1) filed by Respondent.

dismissal of a prosecution against D.F., another individual who had previously been indicted for the crime.

However, ADA Morrison did not take steps to prosecute McFadden immediately, citing a very large case load and the need to prioritize indicted cases, those requiring immediate grand jury action or those, unlike McFadden's that were subject to a statute of limitations. She did not contact the victim until March 2011, scheduling an appointment with her in June 2011. However, the victim failed to attend this meeting. ADA Morrison's subsequent attempts to contact her were unsuccessful.

Trial counsel called the victim as a witness. She testified that the Monroe County District Attorney's Office had informed her in 2006 that the case against D.F. was being dismissed. It was not until March 2011, that she learned of the DNA match between her assailant and McFadden. She made the appointment to meet with ADA Morrison in June 2011, but did not keep the appointment because of some other things that were going on in her life. She contacted the District Attorney's office again in April of 2012.

McFadden also testified at the hearing. He stated that he lived in Monroe County continuously since 2006. He was arrested "a few" times during that period and was on probation in 2012, when investigators approached him in connection with this matter.

Following post-hearing briefing, the trial court denied the motion to dismiss. <u>See</u> SR.90-97. After making factual findings, the

trial court analyzed the pre-indictment delay pursuant to the five-factor test set forth in People v. Taranovich, 37 N.Y.2d 442 (1975), considering (1) the extent of delay, (2) the reason for delay, (3) the nature of underlying charges, (4) the extent of any pretrial incarceration, and (5) whether or not the defense had been impaired by delay. The trial court concluded that the third, fourth, and fifth factors weighed against dismissal because the charges were indisputably serious, McFadden had not been incarcerated until his arrest in June 2012, and McFadden had failed to establish any impairment of the defense. SR.95-96. With respect to the first two factors, the trial court determined that the reason for the delay—the District Attorney's Office's "practical, case-handling order of priority"—constituted good cause for the delay between 2006 and 2012. SR.96-97. Accordingly, the trial court denied McFadden's motion to dismiss the indictment.

### B.   The Trial, Verdict and Sentence

At trial, the victim testified that on May 2, 2006, she worked until approximately 8:00 p.m. She then returned home to her two-bedroom, second-story apartment, where she lived alone with her infant son. T.365, 377-79. After putting her son to bed, the victim folded laundry and watched television in the living room until falling asleep with the lights and television on. T.379-80. She

awoke sometime later when she "felt like there was another presence . . . watching [her]" in the room. T.380.[2]

Upon opening her eyes, she observed that the lights and television were off and a man was kneeling by her feet. T.380. She described the man as an five-foot-seven African-American male with big lips, wearing a black hooded sweatshirt with the hood up. T.401. The victim asked the man who he was and attempted to get up and pull his hood back; he shushed her and told her everything was going to be okay. T.381. He then pushed her back onto the couch and ripped her pants down to her knees. T.381. After unsuccessfully trying to insert his penis into her vagina, the man pulled her pants down further, ripping her underwear. T.382. He got back on top of the victim and inserted his penis into her vagina, keeping his right forearm across her "neck and the top part of [her] chest." T.382-83. The victim could see what appeared to be a steak knife in the assailant's right hand. T.384-85. While he was raping her, the man stated, "I've wanted this since we were ten years old." T.384. The man also told the victim he would kill her son if she screamed or cried. T.384.

The victim asked the man to stop but did not fight back out of fear that he would kill her son. T.384-85. She turned her face to the left and looked out the window because she "didn't want to look

_____

2

Numerals preceded by "T." refer to pages of the trial transcripts (Docket Nos. 16-2, 16-3 & 16-4) filed by Respondent.

in his face." T.384. Eventually, the attacker removed his penis from her vagina and performed oral sex on her while inserting his finger into her anus. T.385-86. He then reinserted his penis into the victim's vagina but took it out and "stood in front of [her] with his penis in [her] face and told [her] to kiss it." T.386. The victim complied, and as she did, the man shoved his penis down her throat. T.386. After he removed his penis from her mouth, he announced that he wanted "to see [the victim] smile." T.387. The victim faked a smile and the rapist instructed her to put a blanket over her head and count to 100. T.387. The victim started counting but stopped at 50 and removed the blanket, thinking the man had left. T.387. He punched her in the left side of the forehead with a closed fist, stating, "[N]ow, bitch, count to 200." T.387-88. The victim complied and waited a few minutes before taking the blanket off. After seeing that the man was now out of her apartment, the victim grabbed a knife from the kitchen. She then gathered up her infant son from his bedroom and ran down the street to her grandmother's house to call the police. T.388-89, 392.

The police responded to the 911 call at approximately 12:55 a.m. on May 3, 2006. T.355-57, 465, 474. The officers met with the victim for approximately one hour before going to the hospital. T.466-68. After she was brought to the hospital, the victim underwent a sexual assault forensic examination. T.394-95, 443-45.

Initially, the victim told police she did not know the identity of her attacker. T.396. However, after thinking about what the rapist had said about "want[ing] this since he was ten years-old," the victim gave police the name of a potential suspect. She testified that she knew three African-American males when she was ten years-old, but one was more light-skinned than her assailant and another had been shot a couple of months before the attack. The victim accordingly provided the name of the third man, D.F., through a "process of elimination." T.396-97. The victim later testified before the grand jury that she was certain that D.F. was the rapist based on his voice and because she had faith in the police investigation. T.398-99, 415-16. D.F. was indicted for the rape, but the indictment was dismissed in September 2006, after DNA testing of the sperm recovered from the victim's vagina excluded D.F. as a suspect. T.405-06; 560-62. That DNA sample was uploaded into a database allowing investigators to obtain an "investigational lead."[3] T.287-88; 562.

McFadden was not arrested for this crime until June 6, 2012, when he volunteered to accompany an investigator from the District Attorney's Office to the Public Safety Building for an interview. T.490-91. After waiving his rights, McFadden gave a recorded interview in which he denied knowing the

---

[3] By agreement of the parties the prosecutor did not mention the CODIS database or otherwise inform the jury that McFadden's DNA was on file in a database of convicted offenders.

victim, being in her house, or committing the crimes. McFadden also consented to give a buccal swab of his DNA. T.506.

DNA testing of McFadden's buccal swab yielded a positive match with the sperm sample recovered from inside the victim's vagina such that the odds of selecting an unrelated individual with the same DNA profile would be less than one in 36.6 quintillion. T.562, 571. A quintillion is a one followed by 18 zeros; 36.6 quintillion is approximately 5 billion times the population of the Earth. T.571.

The defense called one witness, an investigator with the Rochester Police Department. He testified that in May of 2006, the victim had identified D.F., the initial suspect, from a photographic array. T.583-84.

The jury returned a guilty verdict as to all three counts in the indictment.

The trial court sentenced McFadden as a second violent felony offender to determinate 20-year prison sentences on each count of conviction. Those sentences were sent to run consecutively to each other for an aggregate 60-year sentence. S.24-26.

**B.    The Direct Appeal**

Through counsel, McFadden pursued a direct appeal of his conviction, arguing that (1) he was deprived of his state and federal due process rights as a result of the prosecution's pre-indictment delay; (2) the prosecution did not establish the

essential elements of the charges by legally sufficient evidence; (3) the verdicts were against the weight of the credible evidence; (4) the trial court's ruling pursuant to People v. Sandoval, 34 N.Y.2d 371, 376 (1974), was erroneous; and (5) the sentences were harsh and excessive. McFadden filed a pro se supplemental appellate brief arguing that (1) the trial court had improperly shifted the burden to him to show prejudice due to the pre-indictment delay; (2) trial counsel was ineffective for failing to object to the trial court's decision to take the verdict before responding to the jury's final substantive note; and (3) the indictment was rendered duplicitous by the victim's trial testimony, and trial counsel was ineffective for not seeking dismissal of the indictment on that ground.

The Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") affirmed the conviction but agreed that the aggregate sentence of 60 years, which was required to be statutorily reduced to 50 years under P.L. § 70.30(1)(c), (e)(vi), was "unduly harsh and severe, particularly in light of the court's commitment days before the trial to a 10-year term of incarceration for a plea to the rape count." People v. McFadden, 148 A.D.3d 1769, 1773 (4th Dep't 2017). The Appellate Division therefore "modif[ied] the sentence as a matter of discretion in the interest of justice by directing that the sentences imposed on counts two and three shall run concurrently with each other and

-9-

consecutively to the sentence imposed on count one[.]" *Id.* (citation omitted). Appellate counsel sought leave to appeal as to all issues raised before the Appellate Division. On July 5, 2017, the New York Court of Appeals denied leave to appeal. People v. McFadden, 29 N.Y.3d 1093 (2017).

### C. The Collateral Motion to Vacate

McFadden then filed a pro se motion to set aside his sentence pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.20, on the ground that the sentence for count one was required by law to run concurrently with the sentences for counts two and three. In a decision and order dated May 17, 2018 (SR.200-01), the County Court (Valleriani, J.) held that since the decision of the Appellate Division "directed consecutive sentencing, and that directive appears to constitute a prior adjudication on the merits of [McFadden]'s current contention[.]" In such case, the County Court had "no authority to render a contrary decision" therefore it denied the motion pursuant to C.P.L.§ 440.20(2). In the alternative, the County Court denied the motion as factually unsupported pursuant to C.P.L. § 440.30(4)(b).

### D. The Federal Habeas Proceeding

McFadden timely filed a petition raising the same arguments asserted in appellate counsel's brief on direct appeal and his pro se supplemental appellate brief. Respondent filed an answer and

memorandum of law in opposition. McFadden filed a reply. For the reasons discussed below, the petition is dismissed.

## III. Discussion

### A. Grounds One and Six: Due Process Violation Caused by Pre-indictment Delay

McFadden claims, as he did on direct appeal, that he was denied his right to due process by the nearly six-year delay between September 2006, when forensic testing matched his DNA sample listed on CODIS with evidence from the victim's rape kit, and June 2012, when he was arrested charged by indictment.

The Appellate Division observed that the evidence at the Singer hearing held by the trial court "established that much of the delay was caused by the fact that indicted cases were given priority over unindicted cases requiring additional investigation; that a DNA sample from defendant was required to prosecute this matter; that requests were made to the police in 2006 and 2007 to locate defendant; and, from June 2011 to April 2012, the assistant district attorney assigned to the case was unable to locate the victim." People v. McFadden, 148 A.D.3d at 1771. The Appellate Division concluded that the prosecution met its burden at the Singer hearing and that the trial court had "properly applied" the relevant factors "i.e., '(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that

the defense has been impaired by reason of the delay[.]" Id. (quoting People v. Taranovich, 37 N.Y.2d at 445). With regard to the only disputed factors, "the extent and reason for the delay and whether defendant was prejudiced by the delay," McFadden, 148 A.D.3d at 117, the Appellate Division held that "[a]lthough the six-year delay is a factor that weighs in defendant's favor, it is well established that the extent of the delay, standing alone, is not sufficient to warrant a reversal[.]" Id. (citations omitted). Furthermore, McFadden "asserted no impairment of the defense as a result of the delay[,]" id. Finally, the Appellate Division concluded that the prosecution's asserted reasons for the delay "constitute[d] 'acceptable excuse or justification[.]'" Id. (quotation and citation omitted).

Because the Appellate Division adjudicated the pre-indictment delay claim on the merits, the Court must apply the deferential standard of review set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. See Harrington v. Richter, 562 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)."). Under that standard, habeas relief "shall not be granted" unless the state's adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" id. § 2254(d)(2).

Thus, in order to warrant federal habeas relief under 28 U.S.C. § 2254(d)(1), McFadden must demonstrate that the Appellate Division's rejection of his pre-indictment delay claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The "clearly established Federal law" that controls federal habeas review of state court decisions consists of the holdings, as opposed to dicta, of Supreme Court decisions as of the time of the relevant state-court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). The two Supreme Court decisions relevant to McFadden's pre-indictment delay argument are United States v. Marion, 404 U.S. 307 (1971), and United States v. Lovasco, 431 U.S. 783 (1977).

In Marion, the Supreme Court acknowledged that an offense's statute of limitations does not fully define a defendant's rights. It therefore found that the Fifth Amendment, in some circumstances, may require dismissal of an indictment based on delay, even where the prosecution was brought within the applicable limitations period. Marion, 404 U.S. at 324. No due process violation was found in Marion, though, because the defendant neither alleged nor proved

"actual prejudice" and because there was "no showing that the Government intentionally delayed to gain some tactical advantage" over the defendant. Id. at 326.

Five years later, in Lovasco, the Supreme Court observed that "Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790. In that case, "the only reason the [prosecution] postponed action was to await the results of additional investigation[,]" leading the Supreme Court to conclude that "compelling [Lovasco] to stand trial would not be fundamentally unfair[,]" id. at 796, "even if his defense might have been somewhat prejudiced by the lapse of time." Id. The Supreme Court declined to set out a balancing test for determining when pre-indictment delay violates due process, instead leaving it "to the lower courts, in the first instance, the task of applying the settled principles of due process that [it] [has] discussed to the particular circumstances of individual cases." Id. at 797. Thus, for purposes of evaluating pre-indictment delay claims under 28 U.S.C. § 2254(d)(1), there appears to be no definitive balancing test established by the Supreme Court. See, e.g., New v. Uribe, 532 F. App'x 743, 744 (9th Cir. 2013) (unpublished opn.) ("The relevant Supreme Court precedents explicitly decline to set out a clear test for balancing

justification against prejudice, asserting that such balancing requires case-by-case consideration.") (internal citations omitted).

With particular regard to the prejudice factor, the trial court's and the Appellate Division's findings that McFadden had not demonstrated "actual prejudice" to the defense by the delay were clearly in line with the Supreme Court's precedent. In Marion, the defendants relied "solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost." 404 U.S. at 325. McFadden does the same here. The trial court noted in its Singer decision that McFadden "asserted, only generally, that it is now impossible to investigate and present any potential alibi witnesses, that any physical evidence that the Defense may present is likely unavailable, and that due to the passage of time, the Defendant's memory has faded as to any relationship to the Complainant and the location in question." SR.96. The Supreme Court in Marion found that "these possibilities are not in themselves enough to demonstrate that [the defendants] cannot receive a fair trial and to therefore justify the dismissal of the indictment." 404 U.S. at 325-26.

Likewise, the state courts' findings were not an objectively unreasonable application of Lovasco, which held that due process tolerates "some prejudice to the defendant" when the delay is

attributable to continuing investigation by the prosecution. See Lovasco, 431 U.S. at 796 ("[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."). And, as was the case in Marion, 404 U.S. at 325, there is no evidence here that the District Attorney intentionally delayed commencing a prosecution against McFadden. The Supreme Court has never clearly held that negligent delay by the prosecution in bringing an indictment, which is essentially what McFadden alleges, would be sufficient to satisfy a test for a due process violation. See Oppelt v. Glebe, 550 F. App'x 499, 500 (9th Cir. 2013) (unpublished opn.) (recognizing that the Supreme Court "has never held that a due-process violation results from mere negligence" in regards to claims of pre-indictment delay). Therefore, McFadden cannot show that the Appellate Division was objectively unreasonable in finding that the pre-indictment delay did not violate his due process rights.

**B.    Ground Two: Legally Insufficient Evidence**

McFadden contends, as he did on direct appeal, that the evidence is not legally sufficient to support the conviction because the only evidence connecting him to the crimes is DNA evidence taken from a vaginal swab, and there is no physical evidence supporting the counts charging him with first-degree criminal sexual act. The Appellate Division held that McFadden

"failed to preserve that contention for [its] review inasmuch as his motion for a trial order of dismissal was not '"specifically directed" at the error[s] being urged' here[.]" <u>McFadden</u>, 148 A.D.3d at 1770 (quoting <u>People v. Hawkins</u>, 11 N.Y.3d 484, 492; citing <u>People v Gray</u>, 86 N.Y.2d 10, 19 (1995) ("[T]he preservation requirement compels that the argument be 'specifically directed' at the alleged error. . . ."); second brackets in original). In the alternative, the Appellate Division concluded, the claim was "without merit" because even though the victim was "unable to identify her attacker at trial . . . , the DNA evidence alone established [his] identity beyond a reasonable doubt[.]" <u>McFadden</u>, 148 A.D.3d at 1770 (quotation and quotation marks omitted; ellipsis in original).

Respondent argues that the Fourth Department's reliance on an adequate and independent state ground, namely, New York's contemporaneous objection rule, forecloses federal habeas review of this claim. <u>See</u>, <u>e.g.</u>, <u>Garcia v. Lewis</u>, 188 F.3d 71, 76 (2d Cir. 1999) ("Under th[e] [adequate and independent state ground] doctrine the Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'") (quoting <u>Coleman</u>, 501 U.S. at 729; emphases supplied). Here, there is "no question" that the Appellate Division's "explicit invocation of the procedural bar

constitutes an 'independent' state ground," Garcia, 188 F.3d at 77 (citing Harris v. Reed, 489 U.S. 255, 263 (1989)), "even though the court spoke to the merits of [Petitioner]'s claim in an alternative holding," id. (citing 489 U.S. at 264 n. 10).

Turning to the "adequacy" element, the Supreme Court has repeatedly held that "'the question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.'" Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quotation omitted). A federal habeas court's "responsibility to ensure that the state rule is 'adequate' obligates [it] to examine the basis for and application of state law." Garcia, 188 F.3d at 77 (citations omitted). As a general matter, both the Supreme Court and the Second Circuit have consistently recognized that contemporaneous objection serve legitimate state interests, id. at 78 (citations omitted), such as allowing the state judge "to make the factual determinations necessary for properly deciding the federal constitutional question," and promoting "finality in criminal litigation," Wainwright, 433 U.S. at 88. Time and again, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." Id. at 79 (collecting cases).

The Court concludes that it must defer to the Fourth Department's finding of procedural default because that finding is

supported by a "fair or substantial basis," Garcia, 188 F.3d at 78 (collecting cases), in New York state law. Further, the Court finds no basis in the record "for deeming application of New York's contemporaneous objection rule to [Petitioner]'s claim to be 'exorbitant.'" Whitley v. Ercole, 642 F.3d 278, 288 (2d Cir. 2011) (quotation omitted). To the contrary, the Appellate Division's invocation of the contemporaneous rule in the present case was "well within the parameters of its routine and generally unquestionable application to bar review of unpreserved objections to trial testimony[,]" id., where the defendant failed to specify, in his objection, the precise ground later raised on appeal. See id. (collecting cases).

"Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner[,]" Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or that a "'fundamental miscarriage of justice[,]'" Murray v. Carrier, 477 U.S. 478, 496 (1986) (quotation omitted), has occurred such that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Id. at 495. McFadden has not attempted to demonstrate cause for the default and prejudice attributable thereto, or that he is factually, as opposed to legally, innocent. In any event, as Respondent notes, the Appellate Division examined

the merits of McFadden's legal insufficiency claim on direct appeal, despite the lack of a timely and specific motion for a trial order of dismissal. Therefore, McFadden cannot demonstrate that he was prejudiced by counsel's omissions. E.g., Ali v. Unger, No. 6:13-CV-6210 MAT, 2014 WL 257270, at *9 (W.D.N.Y. Jan. 23, 2014) (citing Waters v. McGuiness, No. 99-CV-0615, 2003 WL 21508318, at *3 (E.D.N.Y. June 16, 2003) (where Appellate Division reached the merits of unpreserved legal insufficiency claim on direct appeal and held that the verdict was legally sufficient and not against the weight of the evidence, petitioner was not prejudiced even if counsel was ineffective for failing to preserve the claim), aff'd, 99 F. App'x 318 (2d Cir. 2004)). Accordingly, the legal insufficiency claim is dismissed as subject to an unexcused procedural default.

## C. Ground Three: Verdicts Against the Weight of the Credible Evidence

McFadden reasserts his claim, raised on direct appeal, that the verdicts were against the weight of the credible evidence under People v. Bleakley, 69 N.Y.2d 490, 495 (1987). The Appellate Division rejected this claim. McFadden, 148 F.3d at 1770 ("Upon our independent assessment of all of the proof, and viewing the evidence in light of the elements of the crimes as charged to the jury, we further conclude that the verdict is not against the weight of the evidence[.]") (internal and other citations omitted).

It is well settled that federal habeas corpus review is permitted only where the applicant has alleged that he is in state custody in violation of "the [United States] Constitution or a federal law or treaty." 28 U.S.C. § 2254(a). In other words, "'federal habeas corpus relief does not lie for errors of state law.'" Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "A 'weight of the evidence' argument," however, "is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)[.]" Correa v. Duncan, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) (citing Bleakley, 69 N.Y.2d at 495 (N.Y. Crim. Proc. Law § 470.15(5) permits intermediate appellate courts in New York to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony")). Therefore, McFadden's claim attacking the weight of the evidence supporting the verdicts must be dismissed because it does not raise a federal constitutional issue cognizable in this habeas proceeding. E.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923); accord, e.g., Moye v. Corcoran, 668 F. Supp.2d 523, 539-40 (W.D.N.Y. 2009) (collecting cases).

**D. Ground Four: Erroneous _Sandoval_ Ruling**

McFadden reprises his claim, raised on direct appeal, that the trial court abused its discretion in issuing a _Sandoval_ ruling[4] that permitted the prosecution to cross-examine McFadden with respect to four prior convictions. The Appellate Division disagreed, finding that none of the prior convictions were similar to the charges for which McFadden was on trial. Moreover, that court found, they were probative of his willingness to place his interests above those of society such that he might choose to do the same when testifying. _McFadden_, 148 A.D.3d at 1771-72 (citations omitted).

Habeas courts in this Circuit have held that such claims are barred from habeas review where, as here, the petitioner fails to actually take the stand at trial _E.g._, _Grace v. Artuz_, 258 F. Supp.2d 162, 171-72 (E.D.N.Y. 2003) (in absence of petitioner taking the stand to testify at trial, "petitioner's claim as to the impropriety of the _Sandoval_ ruling [did] not raise a constitutional issue cognizable on habeas review") (citing _Carroll v. Hoke_, 695 F. Supp. 1435, 1440 (E.D.N.Y. 1988)) _aff'd_, 880 F.2d 1318 (2d Cir.1989) (citing _Luce v. United States_, 469 U.S. 38, 43 (1984) (holding that in order "to raise and preserve for review the claim

---

[4]
    In a _Sandoval_ application, the prosecution seeks "permi[ssion] to impeach the credibility of the defendant, if he t[akes] the stand, by confronting him with his prior criminal acts." _People v. Pollock_, 50 N.Y.2d 547, 549 (1980). In making a _Sandoval_ ruling, the trial judgment must "balance[ ] the probative worth of the tendered proof against the risk of prejudice" to the defense. _Id._

of improper impeachment with a prior conviction, a defendant must testify")).

Although McFadden's claim involves the collateral review of a state trial court's <u>Sandoval</u> ruling and <u>Luce</u> involved the direct review by a Circuit Court of Appeals of a federal trial court's ruling pursuant to Rule 609 of the Federal Rules of Evidence, the rationale of <u>Luce</u> is equally apposite here. Both a <u>Sandoval</u> ruling and a Rule 609 ruling seek to balance the prejudicial impact of the prior conviction against its value as impeachment testimony. <u>Compare</u> <u>Sandoval</u>, 34 N.Y.2d at 375, <u>with</u> Fed. R. Evid. 609. In both cases the defendant's failure to testify makes it impossible to test the propriety of the ruling. <u>See</u> <u>Luce</u>, 469 U.S. at 43 ("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.") (footnote omitted). Finally, the Supreme Court observed, "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor,' <u>New Jersey v. Portash</u>, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting), a reviewing court

cannot assume that the adverse ruling motivated a defendant's decision not to testify." <u>Luce</u>, 469 U.S. at 43.

In light of the clear weight of the authority holding that a petitioner's failure to testify at trial precludes habeas review of a <u>Sandoval</u> claim, the Court dismisses Ground Four as not cognizable in this habeas proceeding.

### E. Ground Five: Harsh and Excessive Sentence

McFadden asserts, as he did on direct appeal, that his sentence was harsh and excessive. The Appellate Division agreed, reducing the trial court's sentence by one-third. Following the modification, McFadden's new sentence was a 40-year aggregate term of imprisonment, comprised of a 20-year sentence for the rape conviction, set to run consecutively to the two concurrent 20-year sentences for the two criminal sexual act convictions. <u>McFadden</u>, 148 A.D.3d at 1773. Because McFadden was adjudicated a second violent felony offender, he was subject to determinate sentences of no less than 10 years and no greater than 25 years on each Class B felony offense for which he was convicted. <u>See</u> N.Y. Penal Law § 70.04(3)(a) ("The term of a determinate sentence for a second violent felony offender must be fixed by the court as follows: (a) For a class B felony, the term must be at least ten years and must not exceed twenty-five years. . . .").

As the Appellate Division noted when it modified the sentence, other provisions of New York law capped his maximum aggregate

-24-

sentence at 50 years. McFadden, 148 A.D.3d at 1773 (citing N.Y. Penal Law § 70.30(1)(c) ("If the defendant is serving two or more determinate sentences of imprisonment which run consecutively, the terms of the determinate sentences are added to arrive at an aggregate maximum term of imprisonment, provided, however, that the aggregate maximum term of imprisonment shall be subject to the limitations set forth in paragraphs (e) and (f) of this subdivision, where applicable."); N.Y. Penal Law § 70.30(e)(vi) ("Notwithstanding subparagraphs (i) and (iv) of this paragraph, the aggregate maximum term of consecutive sentences, all of which are indeterminate or all of which are determinate sentences, imposed for the conviction of three or more violent felony offenses committed prior to the time the person was imprisoned under any of such sentences and one of which is a class B violent felony offense, shall, if it exceeds fifty years, be deemed to be fifty years[.]")).

It is well settled that an excessive sentence claim may not form the basis for habeas corpus relief if the sentence is within the range prescribed by state law. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) ("No federal constitutional issue is presented where the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)). The fact that McFadden, even after the Appellate Division's

modification, received the maximum term possible does not make his sentence harsh and excessive. E.g., Mungo v. Duncan, 277 F. Supp.2d 176, 185 (E.D.N.Y. 2003) (dismissing challenge to sentence as not cognizable where petitioner's "sentence of twenty-five years to life, although the maximum allowable under state law, fell within the permitted statutory range"), aff'd, 393 F.3d 327 (2d Cir. 2004). Because the 40-year aggregate sentence falls within the range permitted by state law, McFadden's claim that the trial court abused its discretion is not cognizable on federal habeas review.

**F.   Ground Eight: Conviction on an Unindicted Crime and Duplicitous Indictment**

McFadden contends, as he did in his pro se supplemental appellate brief, that he "was deprived of a fair and impartial trial which is guaranteed by the due process of law . . . when trial testimony presented evidence of two separate and distinct acts for count one and count two which were not included in the Bill of Particular or the Indictment." SR.167 (citing People v. Black, 38 A.D.3d 1283, 1284 (4th Dep't 2007) (reversing conviction where defendant was indicted on a single count of rape, but the evidence established two distinct acts of sexual intercourse between the defendant and the victim)). According to McFadden, the jury possibly convicted him of an unindicted crime because the victim testified about two separate and distinct acts of sexual intercourse and oral sodomy while the indictment only contained one

count regarding each of those acts. SR.168 (citations to record omitted).

The Appellate Division held that its decision in People v. Black, 38 A.D.3d at 1284, was distinguishable on the facts because in that case, "each act [of sexual intercourse] concluded with defendant's ejaculation. . . ." McFadden, 148 A.D.3d at 1772. In McFadden's case, with "respect to the rape count, 'the briefly interrupted act of sexual intercourse . . . was "part and parcel of the continuous conduct" that constituted one act of rape[.]'" People v. McFadden, 148 A.D.3d at 1772 (quotation omitted; ellipsis in original). Finally, the Appellate Division rejected the contention that the victim's testimony with respect to count three related to two instances of criminal sexual act, concluding that "her testimony described acts that were '"part and parcel of the continuous conduct" that constituted one act of [criminal sexual act][.]"'" Id. (quotation omitted).

A duplicitous indictment is one in which two or more distinct crimes are combined in a single count. United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992). "Procedural rules create the prohibition of duplicitous counts—there is no constitutional right against duplicity per se." Jones v. Lee, No. 10 CIV. 7915 SAS, 2013 WL 3514436, at *7 n.72 (S.D.N.Y. July 12, 2013) (citing Williams v. Lempke, No. 11 Civ. 2504, 2012 WL 2086955, at *21 (S.D.N.Y. June 1, 2012) (finding that the petitioner had not cited, and it had not

found, any Supreme Court decision "clearly prohibiting a duplicitous indictment as a matter of federal constitutional law")). The Second Circuit has held that duplicitousness is not presumptively invalid; rather, it is "impermissible" only if it prejudices the defendant. United States v. Sturdivant, 244 F.3d 71, 75 n.3 (2d Cir. 2001).

As a matter of New York state law, the procedural rule against duplicitous indictments is codified at C.P.L. § 200.30(1), which provides that "[e]ach count of an indictment may charge one offense only." N.Y. Crim. Proc. Law § 200.30(1). It is well settled that a violation of a state procedural law does not, in and of itself, present a cognizable question on federal habeas review. Swarthout, 562 U.S. at 219. That said, a duplicitous count in an indictment may violate a petitioner's federal constitutional rights if it violates "the Sixth Amendment's guarantee that an accused be adequately 'informed of the nature and cause of the accusation' and the Fifth Amendment's interdiction against double jeopardy." United States v. Kearney, 444 F. Supp. 1290, 1292 (S.D.N.Y. 1978) (quoting U.S. Const. amend. VI). "These concerns parallel the constitutional requirements for indictments generally." Jones, 2013 WL 3514436, at *7 & n.76 (citing United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (to be constitutionally sufficient, an indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and must

"enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense") (quotation omitted)).

Here, on direct appeal McFadden did not allege that he was denied his Sixth Amendment right to "be informed of the nature and cause of the accusation" against him or denied his Fifth Amendment right to be protected from "be[ing] twice put in jeopardy." United States v. Zeidman, 540 F.2d 314, 316 (7th Cir. 1976) (citation omitted). Rather, he argued that he was convicted of "unindicted" counts of rape and oral sexual conduct and relied on state case law addressing New York's grand jury requirement, e.g., People v. Black, 38 A.D.3d 1283, supra. As noted above, the Appellate Division in Black reversed a rape conviction on the ground that the indictment contained a single count of rape but the prosecution's evidence at trial established two distinct acts of intercourse between the defendant and victim. The Appellate Division reasoned that, because the jury "may have convicted defendant of an unindicted rape," the conviction ran afoul of the "exclusive power" of the grand jury to determine charges. Id. at 1284-85.

The holding in Black was premised on a New York Court of Appeals decision, People v. Grega, 72 N.Y.2d 489 (1988), which interpreted New York State's constitutional and statutory requirements pertaining to grand juries. See id. at 495 (citing N.Y. Const., art. I, § 6 ("No person shall be held to answer for a

capital or otherwise infamous crime . . . unless on indictment of a grand jury. . . ."); N.Y. Crim. Proc. Law § 210.05 ("The only methods of prosecuting an offense in a superior court are by an indictment filed therewith by a grand jury or by a superior court information filed therewith by a district attorney.").

In contrast to New York's Constitution, the United States Constitution does not provide a state criminal defendant the right to indictment by a grand jury. "[W]hile the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts, . . . this provision of the Bill of Rights has not been incorporated against the states through the Fourteenth Amendment." LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (footnote omitted). In other words, there is no federal constitutional provision that parallels N.Y. Const. art. I, § 6, which grants a state defendant facing felony charges the right to indictment by a grand jury.

Because the duplicitous indictment claim does not present a federal constitutional question, it is not cognizable in this § 2254 proceeding. See Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir.1990) (since Fifth Amendment right to grand jury was not incorporated by Fourteenth Amendment, there is no federal right to a grand jury in state criminal proceeding); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (stating that "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a

petit jury, [and] similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack").

## G.    Grounds Seven and Nine: Ineffective Assistance of Trial Counsel

### 1.    Trial Counsel's Error Regarding the Jury Note

On January 31, 2013, before bringing the jury back into the courtroom, the trial court stated for the record that "the jury had sent out a note just a little while ago indicating they were requesting the portion of the testimony of [the forensic biologist] where she discussed that there was evidence of semen in [the victim's] mouth." 1/31/2013 Tr. at 2[5] (Docket No. 16-5, p. 145 of 180).[6] The trial court had showed the note to both attorneys and requested that the court reporter compile the testimony relating to the jury's request. Id. In the course of doing that, the trial court stated, another note was received from the jury simply indicating that it had "reached a verdict." Id. This note also was shown to both attorneys. The trial court explained that it was his "intention to bring the jury out at this time and have them announce their verdict." Id. at 3. The trial court then asked each

---

[5]

The trial transcript numbering resets to page 1 following the jury charge.

[6]

Ellyn Colquhoun ("Colquhoun"), the forensic biologist, testified that People's Exhibit 14 was the buccal swab collected from the victim. T.556. She obtained a "DNA profile consistent with being a single source, meaning DNA from one individual, from a female that was suitable for comparison purposes." T.559:5-12. In other words, she did not find DNA from a second contributor in the victim's buccal swab, whereas in the victim's vaginal swab, there was DNA from a second contributor, which she found matched the DNA on McFadden's buccal swab. T.565:11-18.

attorney if they had any objections, and trial counsel replied, "That's fine, your Honor." Id. McFadden contends that trial counsel was ineffective due to his failure to object when the trial court stated it would accept the verdict before providing a readback of testimony requested by the jury in its prior note. McFadden argues that counsel's failure to object caused him "great prejudice, because if the jury would have received the portion of Ms. Ellyn Colquhoun testimony before making a verdict they would have realized that there was no semen found in [the victim's] mouth." Petitioner's Pro Se Supplemental Appellate Brief at 18, SR.165 (Docket No. 16-1, p. 165 of 201). He contends that trial counsel's failure to object when the trial court failed to meaningfully respond to the jury note was not harmless "because the jury was left with the responsibility to render a verdict with a false interpretation about the DNA evidence presented in this case." Id. at 19, SR.166 (Docket No. 16-1, p. 166 of 201).

On direct appeal, the Appellate Division rejected this contention, finding that McFadden "failed to allege the absence of a strategic or other legitimate explanation for counsel's allegedly deficient conduct in acceding to the court's intention to accept the verdict. . . ." People v. McFadden, 148 A.D.3d at 1772–73 (citations omitted). The Appellate Division's adjudication on the merits of the ineffective assistance claim must be reviewed under 28 U.S.C. § 2254(d) to determine whether it was an unreasonable

application of the clearly established Supreme Court precedent on the Sixth Amendment right to effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 687 (1984).

Under Strickland, to establish that he did not receive the effective assistance of trial counsel, a habeas petitioner must show both that his attorney provided objectively deficient representation and that he suffered prejudice as a result of that deficient performance. "Strickland specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (quoting Strickland, 466 U.S. at 689-90; alteration in original).

Thus, when considering a state court's application of Strickland's performance prong, a habeas court must "begin . . . with the presumption that counsel was effective[,]" Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005) (citing Strickland, 466 U.S. at 690), and then "look for legitimate justifications for th[e] [challenged] conduct, including justifications transparent on the record and justifications offered by counsel." Id. (citing Eze v. Senkowski, 321 F.3d 110, 136 (2d Cir. 2003); footnote omitted). In so doing, the court is "required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [a petitioner]'s counsel may have had

for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal and other citations omitted; quotation marks omitted). Counsel therefore need not necessarily articulate a particular justification for taking (or not taking) a particular action. See id.

Respondent argues that the Appellate Division correctly concluded that McFadden failed to overcome the presumption of effective assistance because legitimate justifications for counsel's challenged actions are "transparent on the record[.]" Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005) (citation omitted). Specifically, Respondent asserts that trial counsel could reasonably have calculated that any benefit from the readback of the forensic biologist's testimony was substantially outweighed by the risk that it would remind the jury of the victim's testimony that her assailant had "shoved [his penis] down [her] throat," T.386, an act which the prosecutor had repeatedly described as "humiliating" during her summation. T.649, 652. That justification, although not proffered by counsel at the time, is nevertheless reasonable. "[A]pply[ing] the strong presumption of competence that Strickland mandates[,]" Cullen v. Pinholster, 563 U.S. at 196, the Court concludes that the Appellate Division did not unreasonably conclude that McFadden's trial counsel provided effective assistance.

**2. Trial Counsel's Error Regarding the Duplicitous Counts**

McFadden also challenges trial counsel's failure to object to the testimony of the victim with respect to the duplicitous counts issue. On direct appeal, the Appellate Division simply noted that "'had defense counsel objected during the trial "[a]ny uncertainty could have easily been remedied" through a jury charge[.]'" McFadden, 148 A.D.3d at 1772-73 (quoting People v. Smith, 145 A.D.3d 1628, 1630 (4th Dep't 2016)). Thus, the Appellate Division's reasoning for rejecting this contention is not entirely clear. However, its citation to Smith suggests that it might have believed that trial counsel had a strategic reason for not objecting. In Smith, the defendant argued, as McFadden did, that trial counsel was ineffective in failing to move to dismiss a count of the indictment on the basis that it was rendered duplicitous by the trial testimony. Smith, 145 A.D.3d at 1630. The Appellate Division stated that had Smith's defense counsel objected during the trial, "'[a]ny uncertainty could have easily been remedied' through a jury charge, and defense counsel may have chosen to remain silent because defendant may have 'prefer[red] to face one count (and thus one conviction) rather than several[.]'" Id. (citation and quotation omitted; brackets in original).

In any event, despite the lack of clarity in the Appellate Division's ruling on McFadden's second contention, it still constitutes an adjudication on the merits for purposes of habeas

review. See, e.g., Finley v. Graham, No. 12CV9055KMKPED, 2016 WL 47333, at *12 (S.D.N.Y. Jan. 4, 2016) ("Even accepting Petitioner's contention that 'the [state] appellate court's decision neither addresses the facts in [his] case nor the particular issues raised in [his] motion[,]' the Court treats his ineffective appellate counsel claim as 'adjudicated on the merits' for habeas purposes.") (citing, inter alia, Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001) (holding that an unexplained state-court disposition of a claim can be entitled to deference under 28 U.S.C. § 2254(d)).

Furthermore, the Court finds that it was not an incorrect application of Strickland. Had trial counsel moved to dismiss the indictment on basis that it charged duplicitous counts, the trial court in all likelihood would have rejected it. If the trial court had granted it, then the Appellate Division would have reversed the trial court on appeal, in light of its ruling that the evidence established that McFadden's forcible vaginal intercourse with the victim, and the contact between his penis and the victim's mouth were each one act of rape and criminal sexual act, respectively. McFadden, 148 A.D.3d at 1772. In such circumstances, trial counsel cannot be found to have provided constitutionally deficient representation. See, e.g., United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (holding that counsel's "failure to make a meritless argument does not rise to the level of ineffective assistance"); see also Santana v. Capra, 284 F. Supp.3d 525, 543

(S.D.N.Y. 2018) (where severance motion was "likely to have failed"
trial counsel "cannot have provided ineffective assistance for
failing to make such a motion") (citation omitted).

## V.   Conclusion

For the foregoing reasons, the request for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254 is denied and the petition is
dismissed. The Court declines to issue a certificate of
appealability because McFadden has failed to make "a substantial
showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d
107, 112 (2d Cir. 2000).

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    August 25, 2019
          Rochester, New York